UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ART BICE, ET AL. | CIVIL ACTION |
| VERSUS | NO. 14-1155 |
| BP EXPLORATION & PRODUCTION, INC., ET AL | SECTION: D (2) |

## ORDER & REASONS

Before the Court are two Motions for Summary Judgment, filed by the Defendants BP Exploration & Production, Inc., BP America Production Company, and BP p.l.c. and joined in by Defendants Halliburton Energy Services, Inc., Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings, LLC, Transocean Deepwater, Inc., and Triton Asset Leasing GmbH (collectively, "Defendants").[1] The Plaintiffs, Art Bice, Bae Bice, and Minor Bice filed a response in opposition to the first Motion for Summary Judgment, but did not file an opposition to the second Motion for Summary Judgment.[2] After careful review of the Motion, the record, and the applicable law, the Motions are **GRANTED** and Plaintiff's claims against Defendants are hereby **DISMISSED with prejudice.**

### I. FACTUAL BACKGROUND

This case arises from Plaintiffs' alleged exposure to harmful chemicals following the Deepwater Horizon oil spill that occurred on April 20, 2010. On January 11, 2013, United States District Judge Carl J. Barbier, who presided over the multidistrict litigation arising out of the Deepwater Horizon incident, approved the

---

[1] R. Doc. 45; R. Doc. 58.
[2] R. Doc. 51.

*Deepwater Horizon* Medical Benefits Class Action Settlement Agreement (the "MSA").[3] However, certain individuals, referred to as "B3" plaintiffs, either opted out of or were excluded from the MSA.[4]

Plaintiffs filed an individual Complaint on April 17, 2014 against Defendants.[5] Plaintiffs allege that after the *Deepwater Horizon* oil spill, they were injured as a result of exposure to oil and/or dispersing chemicals and/or decontaminants while living in Seagrove, Florida.[6] Plaintiffs allege myriad health problems including, *inter alia*, "rashes, gastro disturbances, respiratory problems, headaches and nose bleeds"[7] as a result of their exposure to toxic hydrocarbons while swimming in the Gulf of Mexico. Plaintiffs allege that their injuries were caused by Defendants' negligence, gross negligence, and willful misconduct.[8] Plaintiffs seek to recover, *inter alia*, economic damages, medical monitoring and screening damages, punitive damages, attorneys' fees, costs, and expenses as well as various injunctive relief.[9]

Defendants filed their first Motion for Summary Judgment on May 2, 2022, asserting that they are entitled to summary judgment because Plaintiffs have not produced an expert report or any expert testimony in support of their health complaints and, thus, cannot prove that their alleged medical conditions were caused

---

[3] *See Brown v. BP Expl. & Prod. Inc.*, Civ. A. No. 18-9927, 2019 WL 2995869, at *1 (E.D. La. July 9, 2019) (citation omitted) (Africk, J.).
[4] *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *2 (E.D. La. Apr. 1, 2021) (Barbier, J.).
[5] R. Doc. 1-1.
[6] R. Doc. 51 at p. 2.
[7] R. Doc. 1-1 at p. 26.
[8] *See id.* at p. 27.
[9] See *id.* at pp. 71–72.

by their exposure to substances related to the *Deepwater Horizon* oil spill.[10] Defendants claim that the Fifth Circuit and at least eleven Sections of this Court have issued numerous opinions addressing the obligation of a B3 plaintiff to prove legal causation.[11] According to Defendants, this requirement derives from the fundamental principles governing proof of causation in toxic tort cases decided under general maritime law.[12] Defendants claim that B3 plaintiffs, who were originally part of the multidistrict litigation stemming from the *Deepwater Horizon* oil spill, must satisfy the same legal cause standard as BELO plaintiffs.[13] Defendants further assert that due to the technical nature of the proof, courts have uniformly concluded that toxic tort plaintiffs need expert testimony to meet their burden of proving causation.[14] Accordingly, Defendants claim that courts have repeatedly granted summary judgment dismissing claims of plaintiffs who alleged injuries from exposure to the *Deepwater Horizon* oil spill, but who failed to produce expert support for their claims.[15] Defendants argue that, for these reasons, Plaintiffs' claims lack the expert support required to carry their burden of proof on causation and, thus, that the Court should grant their Motion and dismiss Plaintiffs' claims with prejudice.

The Plaintiffs filed a response to Defendant's first Motion, explaining that their causation experts were unable to meet the Court's April 27, 2022 disclosure deadline

---

[10] R. Doc. 45-1 at pp. 1–2.
[11] *Id.* at pp. 3–4 (citing authority).
[12] *Id.* at p. 4 (citations omitted).
[13] *Id.* at pp. 2, 4.
[14] *Id.* at p. 5 (citing *In re Deepwater Horizon BELO Cases*, No. 20-14544, 2022 WL 104243, at *2 (11th Cir. Jan. 11, 2022).
[15] *Id.* at pp. 5–6 (citations omitted).

"[d]ue to the sheer number of expert reports due in such a compressed timeframe."[16] Plaintiffs attached to their response a report of a non-testifying expert, Dr. William Sawyer, who opines on "Plaintiffs' exposures, Plaintiffs' symptoms, and relates those to symptoms shown by peer-reviewed literature to be caused by exposure to petroleum and/or Corexit."[17] Plaintiffs also attached several other exhibits not pertaining to general causation.[18] In their opposition, Plaintiffs request that this Court grant them a four-month continuance "to procure new causation experts who are able to timely produce a report in this matter and potentially new counsel."[19]

Defendants' Second Motion for Summary Judgment largely reiterates the same points from their first Motion. The Defendants argue that Plaintiffs failed to disclose expert reports by the deadline set forth in this Court's Scheduling Order and that the Plaintiffs should not be granted additional time to find expert support, especially where Plaintiffs did not attempt to explain their untimeliness until after Defendants' first Motion was filed. Defendants also contend that Dr. Sawyer's report is inadmissible because (1) it was untimely disclosed; (2) it is hearsay; (3) it is unsworn; and (4) it fails to meet the requisite standards for a general causation expert opinion.

## II.   LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the

---

[16] R. Doc. 51 at p. 2.
[17] *Id.* at p. 3; R. Doc. 51-2.
[18] R. Doc. 51-2; R. Doc. 51-3.
[19] R. Doc. 51 at pp. 5–6.

movant is entitled to judgment as a matter of law."[20] When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[21] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[22] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[23]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[24] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[25] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving

---

[20] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[21] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).
[22] *Id*. (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[23] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson*, 477 U.S. at 248).
[24] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).
[25] *Id*. at 1265.

party's claim.[26] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[27]

### III. ANALYSIS

To prevail in a toxic tort case such as this, Plaintiffs must demonstrate both general and specific causation.[28] "General causation is whether a substance is capable of causing a particular injury or condition in the general population."[29] "[S]pecific causation is whether a substance caused a particular individual's injury."[30] As Defendants correctly point out,[31] Judge Barbier previously described the BELO and B3 cases in similar terms, explaining that:

> BELO cases and the B3 cases are similar in several important respects. Both allege personal injuries or wrongful death due to exposure to oil or other chemicals used during the oil spill response. Furthermore, both BELO plaintiffs and B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response.[32]

To prove causation, the B3 plaintiffs are required to provide reliable expert testimony.[33] "A plaintiff in such a case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation."[34] In a

---

[26] *See Celotex*, 477 U.S. at 322–23.
[27] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).
[28] *See Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).
[29] *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)).
[30] *Id.*
[31] *See* R. Doc. 45-1 at p. 2.
[32] *See In Re Oil Spill*, 2021 WL 6053613, at *11.
[33] *See, e.g.*, *Seaman v. Seacor Marine, LLC*, 326 Fed. Appx. 721, 723 (5th Cir. 2009).
[34] *Id.* (citing *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)).

separate matter, this Court has explained that the Fifth Circuit and nearly every Section of this Court have uniformly held that, with regard to B3 plaintiffs, "[a]bsent expert testimony, [a B3 plaintiff] cannot meet his burden of proof on causation."[35]

Plaintiffs do not dispute that they do not have admissible expert testimony at this time to satisfy their burden in this case.[36] As that fact is undisputed, the Court recognizes that Plaintiffs have not provided expert testimony to prove causation. Moreover, Plaintiffs have failed to provide admissible summary judgment evidence sufficient to meet that burden in this matter. Dr. Sawyer's untimely report, included as an attachment to the opposition, provides no help to Plaintiffs as he is not a testifying expert.[37] Nor do any of the other hundreds of pages of attached exhibits satisfy Plaintiffs' burden at this stage to produce admissible expert opinions on general causation. Because Plaintiffs lack expert testimony on the issue of general causation, Defendants are entitled to summary judgment as a matter of law.

Further, the Court will not grant Plaintiffs' request for a continuance to find admissible expert opinions. Although Plaintiffs point[38] to the four factors from *Hamburger v. State Farm Mut. Auto. Ins. Co.*[39] for determining whether a court

---

[35] *Dixon v. BP Expl. & Prod., Inc.*, Civ. A. No. 20-3272, 2022 WL 124026, at *3 (E.D. La. Jan. 13, 2022) (Vitter, J.) (quoting R. Doc. 35 in *Bucano v. BP Expl. & Prod. Inc., et al.*, Civ. A. No. 19-13185 (E.D. La. Aug. 4, 2021)); *accord Ngo v. BP Expl. & Prod., Inc.*, No. CV 17-4464, 2022 WL 1748379, at *3 (E.D. La. May 31, 2022) (Vitter, J.); *McGill v. BP Expl. & Prod. Inc.,* 830 Fed. Appx. 430, 434 (5th Cir. 2020).
[36] *See* R. Doc. 51 at pp. 2–3 ("Plaintiffs' causation experts were unable to complete Rule 26 Reports by April 17, 2022 [sic], as contemplated by the scheduling order. . . . Plaintiffs respectfully request additional time to procure new causation expert(s) to . . . opine on the extent, nature, and duration of exposure as it relates to Plaintiffs' damages.").
[37] *See id.* at p. 3.
[38] *See id.* at p. 6.
[39] 361 F.3d 875 (5th Cir. 2004). The four factors are: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4)

should exclude an improperly disclosed expert witness, the Court finds such consideration to be inapplicable to the facts at bar. Here, unlike in *Hamburger*, Plaintiffs do not have an expert witness *at all*.[40] Thus, the question is not whether an untimely disclosed expert ought to be allowed to testify but whether the Court should grant a continuance of the deadline to disclose expert witnesses and allow Plaintiffs to continue searching for potential experts.[41]

Setting aside the procedural irregularity of seeking affirmative relief in a response to a motion, the Court does not find it appropriate to grant Plaintiffs' request for additional time to search for experts. The Court sets its Scheduling Orders to provide for the swift and efficient administration of justice and will not grant continuances without good cause shown.[42] Plaintiffs have not provided good cause for such a request and, as Defendants point out, did not bring this to the Court's attention until *after* Defendants filed their Motion.[43] That is, Plaintiffs waited for

---

the availability of a continuance to cure such prejudice." *Id.* at 883 (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).
[40] *Hamburger* involved an untimely designation of an expert witness. *See Hamburger*, 361 F.3d at 882.
[41] Even if the Court were to consider the *Hamburger* factors, they do not weigh in Plaintiffs' favor. Plaintiffs have not provided adequate explanation for their failure to meet this Court's deadlines, contending only that they were busy and overworked. R. Doc. 51 at pp. 6–7. Secondly, while expert opinion on general causation is necessary for Plaintiffs to carry their burden, the Court notes that in not one B3 case across this court's entire docket has any expert testimony on general causation been found to be reliable and admissible. Accordingly, such expert testimony as may be proffered by Plaintiffs is unlikely to be deemed admissible and will, therefore, be of little importance. As for the third factor, the Court finds that Defendants would be prejudiced by the disruption to the Court's discovery schedule and increased expenses required to litigate the expert report. Although this prejudice may only be slight, a "trial court has latitude to control discovery abuses and cure prejudice by excluding improperly designated evidence." *Geiserman*, 893 F.2d at 791. Finally, a continuance in this case would only result in unnecessary additional delay and expenses, especially where, as here, whatever expert Plaintiffs are able to find is unlikely to produce admissible opinions.
[42] *See also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").
[43] *See* R. Doc. 58-1 at p. 3; *see also* R. Doc. 51 at p. 2 ("Plaintiffs regretfully did not file a Motion to Continue prior to the expert reporting deadline.").

nearly a month after their expert report deadline passed, and after Defendants filed a Motion for Summary Judgment, to include, in their opposition to the Defendants' Motion for Summary Judgment, that they may be seeking a continuance. The Plaintiffs filed this case in May 2014 and have been unable to find any admissible expert witnesses during that eight-and-a-half-year timeframe. Moreover, the Court notes that in the nearly seven months since Plaintiffs filed their response, Plaintiffs have not, to the Court's knowledge, found any potential experts, nor have Plaintiffs filed a motion for leave to amend the Scheduling Order and file an untimely expert report. The Plaintiffs have not established, and the Court finds no good cause, to continue this matter any longer.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment[44] are **GRANTED,** and that Plaintiffs' claims against Defendants are **DISMISSED with prejudice.**

New Orleans Louisiana, December 22, 2022.

**WENDY B. VITTER**
**United States District Judge**

---

[44] R. Doc. 45; R. Doc. 58.